Spear, J.
The defendant is a railroad company operating a steam railway, and the successor of the Cincinnati and Springfield Railway Company. The plaintiff is the owner of a frontage on the east side of Lebanon street, in the village of Carthage, Hamilton county, between Fifth and Sixth streets, of five hundred eight and eight-tenths feet. He acquired the same by purchase from one John W. Applegate, July, 1876, and then received a deed. Applegate had been the owner from the year 1870 to the above date.
On May 2, 1871, the council of the village of Carthage, duly passed an ordinance (which is still in force), authorizing the Cincinnati and Springfield Railway company “to appropriate and use so much of Lebanon street and its crossings as may be necessary for the construction of the Cincinnati and Springfield Railway through said village of Carthage, and to lay their railway tracks therein,” providing, among other things, “that said Lebanon street be so graded and graveled by said railway company as to permit the portion thereof not occupied by said track to be used as other streets are used to the acceptance of the village council,” and, providing further, that for the privileges g’ranted said railway, the village incurred *463 no liability “for any damage which may be claimed by any citizen of the village of Carthage, in consequence of injury to property caused by the construction of said railway through or across any of the streets of said village. ’ ’
On the 20th of June, 1872, said Applegate, by deed of release, in consideration of the station and depot remaining, as per deed of even date, and $1,500, and the advantages the grantor and public would derive from the construction of the railway, granted unto the said The Cincinnati and Springfield Railway “as now surveyed * * * * the right of way for so much of the railway as may pass through the following described piece, parcel or lot of land situated in Millereek township, Hamilton county, state of Ohio,” being the same premises described in the petition, “and I also hereby release to said railway company all claim for damages on account of the construction of said railway over and upon Lebanon street, Carthage, Hamilton county, Ohio, through and along-said premises.” Concurrent therewith, in consideration of $1,500, he conveyed the ground on which the station then and now stands by deed. The deed for the depot grounds was recorded May 14, 1875, but the deed of release was not recorded until May 13, 1887. Lebanon street is sixty-six feet in width. In July and August, 1872, the railway company laid one track over and upon Lebanon street, east of the center line of said street, the center of the track being forty and six-tenths feet from the west line, and twenty-five and four-tenths from the east line, and was the only track laid the full length of the street until after the bringing of this suit, although in May, 1887, without the consent of plaintiff, the defendant laid a track in the street between the one mentioned and plain *464 tiff’s premises, commencing at Sixth street and extending south about three hundred and six and eight-tenths feet, and used said track for standing cars and switching purposes until June, 1892, when it was made one of the main tracks of the railway. An action is now pending to recover damages for the alleged wrongful laying of said track, upon a claim that it interferes with the use of the street and with ingress to and egress from plaintiff’s said premises.
In April, 1892, the defendant having made preparations to lay a new and additional track on Lebanon street, between the original track and the premises of plaintiff, commencing at the south end of the track laid in 1887, and extending south on and over Lebanon street the full length in front of plaintiff’s premises, this action was commenced to enjoin the laying of the same for the reasons stated in the petition; a restraining order was refused by the common pleas court and by the circuit court on appeal. The defendant then laid the new and additional track, the east rail of which was six and one-half feet from the curb line, and the overhanging cars extending within four feet of the east curb line of the street. The width of the sidewalk had been reduced from thirteen to eight feet. The company has ever since and does now use. and maintain the new track as a part of its railway, and one of the main tracks thereof. Said track was laid without the consent and against the protest of plaintiff, and defendant has not in any way compensated plaintiff for the laying of the same, the interference with the use of the street and with ingress and egress to and from his premises, and the other incidental damages sntfered by plaintiff by the laying of the track. •
*465 Stated in general terms, the contention of the plaintiff is that the laying of an additional track on Lebanon street imposes a burden upon his property for which he is entitled to compensation, and that, under the constitution and the decisions, this must be done before the taking; that the village council cannot prejudice his rights as an abutting owner, and that injunction is the proper remedy.
For the defendant it is contended that the ordinance gave full right to go upon the street and lay all necessary tracks for its road; that this track is necessary, and that the release by Applegate bars any claim by plaintiff both as to.damages and to injunction.
Respecting the rights in a street, of the municipality and the owner of lands abutting, there has been no modification, so far as we are aware, of the plain principle announced in Crawford v. Delaware Ohio St., 459, and followed in numberless cases since. In substance it is that the acquisition by a municipality, of land for a street, involves the right to put and maintain the street in suitable condition to answer all purposes of the acquisition, to which public right all private rights of lot owners are necessarily subordinated, while there remains in the owner of abutting land, inhering in the land and attaching to it, a private right in the street in the nature of an incorporeal hereditament, as much property as the land itself. The decisions referred to illustrate two ideas respecting the ownership of the street: the right of the public at large, as represented by the municipality, and the right of the owner of abutting lands. Whether the title of the municipality is acquired by grant, by common law dedication, or *466 by appropriation, it is held in trust for the public, with the power of control, and accompanied with the duty of keeping open, in repair, and free from nuisance. The right of general use and enjoyment the adjoining owner possesses in common with the public at large, and that right may be affected by whatever the municipality may lawfully do or permit respecting the street. But his separate right, being a right of property, appurtenant to his land, can be taken or invaded only upon the terms of the constitution, viz.: that compensation shall be first made. And this principle controls the case at bar, and rules it in favor of the plaintiff, unless his rights are affected by the release of Applegate to the Cincinnati and Springfield Railway Company, of J une 20, 1872. Should it become necessary to construe this release then the provisions of the ordinance might be important as throwing’ light on its true interpretation, but unless this necessity arises it can hardly be contended that the ordinance plays any part in the controversy, for the right of the land owner, being of the character of private property, it follows that the village council had no power, by ordinance or otherwise, to bargain away, or impair, that right. And it is not important to consider the provisions of the ordinance with respect to the rights obtained by rhe company, as between itself and the public.
Nor is it necessary to discuss the effect of the release as between Applegate and the company unless it shall be found that the plaintiff is bound by its provisions notwithstanding it was not recorded until after he purchased and took possession of the land. The answer to this question depends upon whether or not, within the meaning of our *467 statute, the plaintiff was (1) a bona fide purchaser, and (2) was without knowledge at the time of the purchase, of the prior conveyance. We understand that the term purchaser, as read in this connection, does not mean simply one who has taken title in any way other than by descent, but does mean one who is a buyer for a valuable consideration; and the transaction of purchase must have been a real and not a simulated one. No question was made below, or is made here in argument, that the plaintiff, in his dealing with Applegate by which he acquired title, was not a purchaser for value. The claim is, however, that he is not a bona fide purchaser with respect to the release of Applegate to the C. & S. Ry. Co., because, seeing the single track of the railroad in the street at the time, he was bound at his peril, to assume that the railway was there by virtue of some grant from Applegate, and that it was then his duty to inquire of the company, or of Applegate, or of both, as to the extent of the grant; that he is chargeable with all knowledge that inquiry would have elicited; that such inquiry would have informed him that the company had obtained from Applegate the right to lay what the ordinance permitted, to wit: its railway in the street, and- that meant as many tracks as might be necessary in the operation of the road.
The gist of this proposition is that the plaintiff although a purchaser for value, was not a purchaser in good faith within the meaning of the, statute. The statute in force at the time of plaintiff’s purchase, (1 S. & C., 467), provides : “That all other deeds and instruments of writing, for the conveyance or incumbrance of any lands, tenements, or hereditaments, executed agreeably to the foregoing provisions, shall be so recorded within six months from the date thereof; and if *468 such deed or other instrument of writing, shall not be so recorded within the time herein prescribed, the same shall be deemed fraudulent, so far as relates to any subsequent bona fide purchaser having, at the time'of making such purchase, no knowledge of the existence of such former deed or other instrument of writing: Provided, that such deed or other instrument of writing, may be recorded after the expiration of the time herein prescribed, and from the date of such record shall be notice to any subsequent purchaser.” Plaintiff was a bona fide purchaser in the fullest sense unless he was bound to inquire. We think he was not. The pertinent rule is that which obtains in relation to commercial paper, as illustrated in Johnson v. Way, 27 Ohio St., 374, Kitchen v. Loudenback, 48 Ohio St., 177, and other cases, which applied here warrants the conclusion that when it appears that'the party ‘was a purchaser for value it is not a defense in support of a claim based on an unrecorded deed to show that he took title under circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man. No other view will give effect to the statute. Its words make absence of knowledge of the release at the time of the purchase the test; not absence of that which might induce inquiry. A holding which would substitute constructive notice, in the absence of a record, for actual knowledge, would clearly violate this statute. It appearing that the plaintiff was a purchaser for value, a presumption of want of knowledge of the release at the time of the purchase was raised, and he was entitled to the protection of the statute unless this presumption was overcome by evidence. The burden of showing such actual knowledge, therefore, was on the company. Morris v. Daniels, 35 Ohio St., 406. It offered no *469 testimony from which such a fact may be inferred.
Plaintiff concedes that he was chargeable with knowledge of the railroad as it was built at the time of his purchase, and of the actual use then being made of the street by the company. And this is carrying the doctrine of presumption far enough. In no aspect of the case could he be bound to assume that the company had acquired the right to lay additional tracks. Had the company placed its release on record at the proper time, that, under the statute, would have been notice; having chosen to keep it off the record for more than six months and until after its grantor sold to a bona fide purchaser, the company cannot now be heard to assert that the title of that purchaser is impaired by its unrecorded release. The statute but adopts the principle of equity which holds that he, in consequence of whose negligence a fraud has been committed, shall sustain any resulting loss, and the rule is just, wise and salutary.
Upon the admitted facts the plaintiff was entitled to an injunction preventing the laying of the additional track, and is now, as matter of strict right, entitled to a mandatory injunction. However, in consideration of the fact that the courts below refused injunction, and that the track in controversy was not put down until after decision by the circuit court in favor of the company, and of the further fact that the traveling public would be more or less inconvenienced by a removal of the additional track, a reasonable time, to be specified in the journal entry, will be given the company to acquire from the plaintiff the right to maintain its track by a proceeding to appropriate, or by other proper means.

Judgment reversed and judgment for plaintiff in error.